Honorable Jamal N. Whitehead

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

| | |
|---|---|
| IN RE: ABC LEGAL SERVICES DATA SECURITY LITIGATION<br><br>This Filing Relates to:<br>All Actions | Master File No. 2:24-cv-02092<br><br>PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT<br><br>NOTE ON MOTION CALENDAR:<br>Monday, October 26, 2026 |



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## TABLE OF CONTENTS


**Page(s)**

INTRODUCTION ........................................................................................ 1

BACKGROUND........................................................................................... 1

I. THE SETTLEMENT.................................................................................. 3

A. Overview............................................................................................ 3

B. The Settlement Class.......................................................................... 3

C. Settlement Class Member Benefits.................................................... 4

D. The Notice Program............................................................................ 5

E. Opt-Outs and Objections..................................................................... 6

F. Attorneys' Fees, Expenses and Service Awards.................................. 6

G. Class Action Fairness Act ("CAFA") ................................................. 7

II. ARGUMENT.......................................................................................... 7

A. The Settlement Class Continues to Merit Certification. ...................... 7

B. Notice Satisfies Due Process................................................................ 8

C. The Court Should Finally Approve the Settlement............................... 9

D. Class Counsel and Plaintiffs Have Adequately Represented the Settlement Class............................................................................................ 10

E. The Settlement Has No Indicia of Collusion and is the Result of Hard-Fought Negotiations............................................................................ 11

F. The Relief Provided in the Settlement is Fair and Adequate in Light of the Risk and Complexity of the Case.............................................. 12

G. The Settlement Treats Settlement Class Members Equitably.............. 16

III. CONCLUSION..................................................................................... 17




MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## INTRODUCTION

Class Representatives Anthony Crowley, Steven Sanchez, Kaylee Rinne, Samantha Bodtker, Teresa Bushek, Jeff Hoffman, Craig Vann, and James Munger (collectively, "Plaintiffs") previously moved for preliminary approval of a settlement with ABC Legal Services, LLC ("Defendant"), the terms and conditions of which are set forth in the Settlement Agreement and Release (the "S.A."), attached to the Declaration of Kaleigh N. Boyd in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement as Exhibit A, filed April 1, 2026. Dkt. #47-1.[1] The Court granted preliminary approval of the class action Settlement on May 28, 2026. Dkt. #50 ("Preliminary Approval Order").

The class Notice plan has now been completed, with the Short Form Notice having been sent to Settlement Class Members as instructed by the Court's Preliminary Approval Order. *See* Declaration of Kevin Balhoff Regarding Implementation of Notice Program and Verification of Compliance with Notice Requirements ("Admin Decl.") ¶¶ 7–8. The deadline to opt out or object to the Settlement was August 28, 2026: only two Settlement Class Members opted out, and no Settlement Class Member objected. *Id.* ¶¶ 15–16.

The Settlement provides an outstanding recovery for Settlement Class Members. Accordingly, Plaintiffs respectfully request that this Court enter an order: (1) granting Final Approval to the Settlement; (2) certifying the proposed Settlement Class for settlement purposes; (3) granting Plaintiffs' concurrently filed Motion for Attorneys' Fees, Costs, and Service Awards (the "Fee Motion"); and (4) entering Final Judgment. So that the Court has the most up-to-date proposed order, Plaintiffs will submit a proposed order closer to the final approval hearing currently scheduled for October 26, 2026.

## BACKGROUND

This Action arises from the alleged compromise of Plaintiffs' and the Settlement Class Members' Personal Information due to a breach of Defendant's network and systems. Beginning

---

[1] All capitalized terms not defined herein have the same meaning as in the Settlement Agreement



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

on or around August 7, 2024, an unknown actor gained unauthorized access to Defendant's computer network. Defendant subsequently began notifying individuals whose Personal Information was potentially accessed and exfiltrated as a result of the Data Incident.

In response, multiple class action lawsuits were filed against Defendant for claims arising out of the Data Incident. On February 11, 2025, this Court consolidated the Related Actions and appointed proposed Class Counsel as interim class counsel. *See* Dkt. ##12, 34. The Court directed that the related actions be consolidated under the first-filed case and re-captioned the Action as *In re: ABC Legal Services Data Security Incident*, Case No. 2:24-cv-02092 (W.D. Wash.). *See* Dkt. #12. Plaintiffs thereafter filed their Consolidated Class Action Complaint ("Complaint") on March 1, 2025. Dkt. #16. Defendant filed a Motion to Dismiss Plaintiffs' Complaint, and Plaintiffs timely responded. Dkt. ##18, 21. Before this Court ruled on Defendant's Motion to Dismiss, the Parties agreed to attend mediation and requested that the Court stay the case pending mediation. Dkt. #24.

On September 25, 2025, the Parties attended a full-day mediation before Rodney Max of Upchurch Watson White & Max, a mediator with significant experience in data breach class actions. *See* Decl. of Kaleigh N. Boyd in Support of Pls.' Unopposed Mot. for Final Approval of Class Action Settlement and Mot. for Attorneys' Fees, Costs, and Service Awards ("Boyd Decl.") ¶ 6. Before the mediation, the Parties engaged in an informal exchange of information and documents and presented their positions and arguments in confidential submissions to Mr. Max. *Id.* At the mediation, the Parties were unable to reach an agreement. *Id.* The Parties continued to engage in settlement discussions for many weeks thereafter. *Id.* Following the substantial back-and-forth, arm's-length negotiations and advocacy by counsel on behalf of the Parties, the Parties were finally able to agree to a settlement in principle. *Id.* Thereafter, the Parties spent additional weeks negotiating the full terms of the Settlement Agreement. *Id.* The Settlement is memorialized in the Settlement Agreement.

The Court granted preliminary approval to the Settlement on May 28, 2026. Preliminary Approval Order, Dkt. #50. Following the Court's approval, the Settlement Administrator



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

implemented the Court-approved notice and claim administration process. Plaintiffs now request that the Court finally approve the Settlement, which will bring finality to this matter, and permit the Settlement Administrator to begin issuing payment to Settlement Class Members who submitted Valid Claims.

## I. THE SETTLEMENT

### A. Overview

The Settlement creates a $2,500,000.00 non-reversionary common fund that provides: (1) up to a total of $5,000 per claimant for documented out-of-pocket losses; (2) a *pro rata* cash payment, which was estimated at the time Plaintiffs moved for preliminary approval to be $50.00, and (3) two years of Credit Monitoring and Insurance Services ("CMIS") regardless of whether they make a claim for payment. *See* S.A. ¶¶ 52, 54, 57. Defendant also has made business practice changes relating to data security valued at approximately $775,000, which Defendant paid separate and apart from the Settlement Fund. *Id.* ¶ 58.

The Settlement Administrator received 12,787 timely and valid claims. Admin. Decl. ¶ 14. Of those, 12,527 Settlement Class Members have submitted a claim for a Pro Rata Cash Payment. Presently, this payment is expected to be $108.82, but is subject to change if additional claims are received between the date of this filing and the Claims Deadline of September 28, 2026. *Id.*

### B. The Settlement Class

The Settlement Class is defined as "the persons who are identified on the Settlement Class List, which includes all individuals residing in the United States whose Personal Information was potentially compromised in the Data Incident discovered by Defendant in November 2024, including all those individuals who received notice of the Data Incident." Preliminary Approval Order ¶ 1. The Settlement Class excludes: (1) the judges presiding over this Action, and members of their direct families; (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id.*



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

### C. Settlement Class Member Benefits

In exchange for full and complete settlement and release of Plaintiffs' and Settlement Class Members' claims concerning the Data Breach, Defendant agreed both to pay $2,500,000.00 into a non-reversionary Settlement Fund and to implement business practice changes related to data security.

Under the terms of the Settlement Agreement, each Settlement Class Member may submit a Claim seeking reimbursement of documented losses up to $5,000.00. S.A. ¶ 54. Additionally, all Settlement Class Members may submit a claim for a Pro Rata Cash Payment from the Net Settlement Fund. *Id.* ¶ 52. At the time the Settlement was finalized, the Pro Rata Cash Payment was estimated at $50. *Id.* Now that the Settlement Administrator has started processing and verifying claims, the Pro Rata Cash Payment is expected to be $108.82, but is subject to change based on the number of valid claims received. Admin. Decl. ¶ 14. The deadline to submit Claims is September 28, 2026.

Settlement Class Members may also elect to receive two (2) years of Credit Monitoring and Insurance Services ("CMIS") regardless of whether they make a claim for payment. S.A. ¶ 57. These services include one-bureau credit monitoring, dark web monitoring, real time inquiry alerts, and $1 million in identity theft insurance, among other features. *Id.* ¶ 8.

Defendant also has made business practice changes relating to data security. *Id.* ¶ 58. These business practice changes are valued at approximately $775,000, which Defendant paid separate and apart from the Settlement Fund. *Id.* As such, the total value of the Settlement is $3,275,000.

In sum, the Settlement provides a simple, straightforward claims process by which Settlement Class Members may obtain an award from the Settlement. In exchange for the monetary and non-monetary benefits provided under the Settlement, Settlement Class Members will release any and all claims against Defendant and the Released Parties arising from or related in any way to the claims that have been brought or could have been brought in this Action. *Id.* at § XII.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

**D. The Notice Program**

Eisner Advisory Group, LLC ("Eisner") maintains a database of 245,414 Settlement Class Members, which was used to effectuate the Notice campaign as outlined within the Settlement Agreement. Admin Decl. ¶ 7. EAG received the class data from Defendant's Counsel on April 10, 2026, in an Excel file with a total of 245,808 records. *Id.* After removing duplicates, blank records, and test records from the class data, 245,414 unique records remained. Of these unique records, 861 records did not contain any address information. *Id.*

Following the Court's preliminary approval of the Settlement and appointment of Eisner as the Settlement Administrator (*see* Preliminary Approval Order ¶ 6), Eisner mailed a Short Form Notice via postcard to 244,552 (99.65%) Settlement Class Members. Admin Decl. ¶¶ 8, 13. As of September 4, 2026, the Notice Program reached a total of 234,529 (95.56%) Settlement Class Members. *Id.* ¶ 13. A reach rate of 95.56% is consistent with other court-approved, best practicable notice programs. *Id.* ¶ 18.

The Short Form Notice included, among other information, a description of the material terms of the Settlement, a date by which Settlement Class Members may exclude themselves from, or "opt-out" of, the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date on which the Final Approval Hearing is scheduled to occur; and the address of the Settlement Website at which Settlement Class Members may access the Settlement Agreement and other related documents and information. *See* Admin Decl. Ex. B. The Short Form Notice also included a tear-off claim card to claim credit monitoring services and/or a Pro Rata cash payment. *Id.* ¶ 8.

Eisner also maintains the Settlement Website, www.ABCDataSettlement.com. Visitors to the Settlement Website can download the Long-Form Notice, the Claim Form, and other documents, such as the Class Action Complaint, the Settlement Agreement, Motions filed by Class Counsel, and other relevant documents. *Id.* ¶ 10. Visitors are able to submit claims electronically, find answers to frequently asked questions (FAQs), important dates and deadlines, and contact



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

information for the Settlement Administrator. As of September 10, 2026, the Settlement Website received 21,822 unique visits. *Id.*

On June 29, 2026, EAG established a dedicated toll-free telephone number, 1-844-482-2656, which is available twenty-four hours per day. *Id.* ¶ 11. Settlement Class Members can call and interact with an interactive voice response system that provides important settlement information and offers the ability to leave a voicemail message to address specific requests or issues. *Id.* EAG also provided copies of the Long-Form Notice, paper Claim Form, as well as the Settlement Agreement, upon request to Settlement Class Members, through the toll-free number. *Id.* The toll-free number appeared in all Notices, as well as in multiple locations on the Settlement Website. The toll-free number will remain active through the close of this Settlement Program.

Additionally, EAG established an email address, info@ABCDataSettlement.com, to provide an additional option for Settlement Class Members to address specific questions and requests to the Settlement Administrator for support. *Id.* ¶ 12.

**E. Opt-Outs and Objections**

The Notices informed Settlement Class Members of their right to opt-out or object. *See* Admin Decl. Ex. B; *see also* S.A. Ex. B. The deadline to object or opt-out was August 28, 2026. These deadlines were specified in each of the Notices. *See id*. Following Notice to the Class, the Settlement Administrator received two requests for exclusion and zero objections. Admin Decl. ¶¶ 15–16.

**F. Attorneys' Fees, Expenses And Service Awards**

Class Counsel will file a Motion requesting approval of attorneys' fees, expenses, and Class Representative Service Awards concurrently with this Motion. Class Counsel will seek approval of attorneys' fees in the amount of $833,333.33 (one-third of the Settlement Fund),[2] expenses of $16,850.22, and Service Awards of $3,500 for each of the Class Representative. Defendant does

[2] When factoring in the additional value of the business practices changes that Defendant agreed to implement apart from the Settlement Fund, the requested attorneys' fees are 25% of the total value of the Settlement.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

not oppose this Motion in any respect, and no Settlement Class Member has filed an Objection to the requested attorneys' fees or Service Awards. The dollar amount of the attorneys' fees and Service Awards, as well as the intention to seek reimbursement of out-of-pocket expenses, was communicated to Settlement Class Members in the Notices. Admin. Decl. Exhibit B; *see also* S.A. Ex. B.

**G. Class Action Fairness Act ("CAFA")**

On April 10, 2026, pursuant to 28 U.S.C. §1715(b), Eisner, on behalf of the Defendant, caused notice of this Settlement and related materials to be sent to the Attorneys General of all U.S. states, District of Columbia, and overseas territories, as well as the Attorney General of the United States. Admin Decl. ¶ 6. To date, Eisner has not received any objection from any Attorney General. *Id.*

**II. ARGUMENT**

Plaintiff respectfully requests that the Court grant final certification of the Settlement Class because: (1) the Settlement Class satisfies the requirements of Rule 23(a) and (b)(3); (2) the Court-approved Notice Program satisfies both Rule 23 and due process requirements and has been fully implemented pursuant to the Court's requirements; and (3) the Settlement is fair, reasonable, and adequate.

**A. The Settlement Class Continues to Merit Certification.**

A threshold inquiry at final approval is whether the Class satisfies the requirements of Rule 23(a) and (b). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998). The Court completed this first step in the settlement approval process when it granted preliminary approval and provisionally certified the Settlement Class. *See* Preliminary Approval Order, Dkt. #50. Here, the Court's Preliminary Approval Order made specific findings that the Settlement Class met each of the four Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy. *Id.* at 4. Likewise, the Court found that the Settlement Class satisfies the Rule 23(b) requirements. Specifically, the Court found that common questions predominate over questions affecting



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

individual Class Members only, in particular, whether Defendant was negligent regarding its handling of Plaintiffs' Personal Information. Additionally, the Court found that a class settlement is superior to other methods available for a fair resolution of the controversy. *Id.* Plaintiff respectfully submits that nothing has changed since these findings were made, and they remain accurate. Because no relevant facts have changed since the Court certified the Settlement Class, the Court need not revisit class certification here. *Aikens v. Panatte, LLC*, No. 2:17-cv-01519, Dkt. No. 54 (W.D. Wash. Feb. 5, 2019); *Ewing v. Admin. Sys., Inc.*, C08-0797 RAJ, 2009 WL 10725426, at *4 (W.D. Wash. Sept. 30, 2009); *see also Jamil v. Workforce Res., LLC*, 2020 WL 6544660, at *3 (S.D. Cal. Nov. 5, 2020).

**B. Notice Satisfies Due Process.**

Prior to granting final approval, this Court must consider whether the members of the class received adequate notice of the settlement. Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Specifically, the court must find that the notice to the class was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "[T]he rule does not insist on actual notice to all class members in all cases . . . ." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (quoting *Mullins v. Direct Digital LLC*, 795 F.3d 654, 665 (7th Cir. 2015)). Although what constitutes the "best notice practicable" is case-specific, the Federal Judicial Center has noted that a notice campaign that reaches 70–95% of a class is often reasonable and satisfies due process. Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide*, 3 (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

The claims rate here—approximately 5.21%—is in line with, and even exceeds, typical data breach class action settlements. *See Hightower v. Receivable Performance Mgmt.*, No. 2:22-cv-01683, Dkt. No. 85 (W.D. Wash Dec. 13, 2024) (approving settlement with 0.65% claims rate); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (approving claims rate of 0.83%); *Theodore Broomfield v. Craft Brew Alliance, Inc.*, 2020 WL 1972505, at



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

*7 (N.D. Cal. Feb. 5, 2020) (approving settlement with response rate of "about two percent"); *Bostick v. Herbalife Int'l of Am., Inc.*, No. CV 13-2488, 2015 WL 12731932, at *27 (C.D. Cal. Mat 14, 2015) (approving settlement with "response rate of less than 1%"); *see also Summers v. Sea Mar Cmty. Health Centers*, 29 Wash. App. 2d 476, 497 (2024) (finding response rate of approximately 0.5% sufficient and explaining that "[a] response rate is relevant only secondarily to the examination of the notice that was provided in the context of the possible forms of notice reasonably available.").

The Court already provisionally approved the Notice Program proposed by Plaintiffs and Class Counsel, including the forms of the Short Form Notice and Long Form Notice, finding that they complied with the requirements of Rule 23 and due process. *See* Preliminary Approval Order 5. The Court also approved of Plaintiff's proposed manner of distribution of Notice forms as compliant with the requirements of Rule 23 and due process. *Id.*

Plaintiffs' implementation of that Notice Program was successful in all aspects. The Notice Program as designed and implemented reached approximately 95.56% of the identified Settlement Class. Admin. Decl. ¶¶ 13, 18. That figure far exceeds the constitutional due process requirement in this Circuit. *See, e.g.*, *Askar v. Health Providers Choice, Inc.*, No. 19-CV-06125-BLF, 2021 WL 4846955, at *3 (N.D. Cal. Oct. 18, 2021) ("[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23.") (quotatoin omitted). Finally, all forms of Notice accurately described the Settlement and directed the recipient to the Settlement Website where further information was available.

The Court should therefore find that the Notice Program, as executed, satisfied Rule 23(c)(2)(B) and fully complied with due process requirements.

### C. The Court Should Finally Approve the Settlement.

To approve a class action settlement as fair, reasonable, and adequate, Rule 23(e)(2) requires the Court to consider "whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." At the final approval stage, the court considers the settlement in light of a non-exhaustive list of factors—the so-called *Churchill* factors—including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Hanson v. MGM Resorts Int'l*, No. 16-cv-1661-RAJ, 2018 WL 3630284, at *4 (W.D. Wash. July 31, 2018). Not surprisingly, there is overlap between the 23(e) fairness, reasonableness, and adequacy considerations and the factors set out in the Ninth Circuit test in *Churchill*, 361 F.3d at 575. The Ninth Circuit has instructed that the court's 23(e)(2) analysis should be guided by the *Churchill* factors. *See Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

### D. Class Counsel and Plaintiffs Have Adequately Represented the Settlement Class.

Plaintiffs and Class Counsel have represented the Settlement Class adequately in connection with both the litigation and the Settlement. Plaintiffs' claims are typical of, and coextensive with, those of the Settlement Class, and they have no interests that are antagonistic to other members of the Settlement Class. *See Hanlon*, 150 F.3d at 1020. Indeed, Plaintiffs share the primary goal with the Settlement Class of obtaining the largest possible recovery from Defendant. Class Counsel diligently represented the Class throughout the course of this complex and hard-



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

fought litigation. Class Counsel, who are experienced in representing plaintiffs in class action and data privacy cases, have spent over 21 months litigating this case and advocating for the Class. As a result of their efforts, the Settlement provides considerable relief to participating Settlement Class Members. By any measure, Class Counsel's efforts constitute adequate representation of the Class.

**E. The Settlement Has No Indicia of Collusion and is the Result of Hard-Fought Negotiations.**

The Ninth Circuit instructs courts to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). When approving a settlement prior to class certification, the Court is required to engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth*, 654 F.3d at 946.

The Settlement here was the result of arm's-length negotiations conducted over the course of approximately three months. *See* Boyd Decl. ¶ 6. Courts within the Ninth Circuit "have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013); *see also Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

Finally, the Settlement here has none of the indicia of possible collusion identified by the Ninth Circuit, such as a disproportionate requested attorneys' fee, a "clear sailing" fee agreement separate and apart from class funds, or the reversion of unpaid fees to the defendant. *See In re Bluetooth*, 654 F.3d at 947. And, while Class Counsel's fee will be determined separately, as explained in Class Counsel's Motion for Attorneys' Fees, they seek a recovery that is consistent



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

with Ninth Circuit precedent, reflects their work performed, and is proportionate to the total benefit provided. Accordingly, all evidence indicates that this Settlement was not "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 324–25 (C.D. Cal. 2016) (internal quotation omitted).

**F. The Relief Provided in the Settlement is Fair and Adequate in Light of the Risk and Complexity of the Case.**

In Plaintiffs' Motion for Preliminary Approval, Plaintiffs provided an in-depth discussion regarding the fairness and adequacy of the Settlement. See Dkt. #46 at 4–10. In granting preliminary approval to the Settlement, this Court made a preliminary determination that the settlement is fair, reasonable, and adequate and in the best interest of the named Plaintiffs and the Settlement Class. Preliminary Approval Order at 4. Here, evaluating the risks of continued litigation against the scope of relief this Settlement provides to the Class, the Settlement also merits final approval.

**1. The risk, expense, complexity, and likely duration of further litigation.**

This Settlement is excellent not only because of the valuable Settlement Benefits obtained for the Settlement Class, but also because Plaintiffs would have faced significant risks in litigating this case through trial. Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a complex class in an uncertain and ever-developing area of the law. Some data breach cases have faced hurdles in surviving even the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1–2 (S.D.N.Y. June 25, 2010) (collecting cases). Moreover, to Class Counsel's knowledge, no data breach class action has ever been tried, let alone resulted in a final judgment in favor of a class.

Each of these risks poses a risk that Settlement Class Members could end up losing the case at or before trial and recovering nothing at all. Generally, "unless the settlement is clearly



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019). Thus, this factor favors approval.

**2. The risk of maintaining class action status through trial.**

If this case were to proceed forward in adversarial litigation, Plaintiffs face the additional risk of maintaining class certification through trial because Defendant would fiercely oppose class certification. Assuming Plaintiffs were able to proceed forward after obtaining a ruling certifying a contested class, they would still face risks and delays in maintaining and litigating their class claims. The Ninth Circuit recognizes the inherent risk that a district court "may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("Even if the Court were to certify the class, there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class."). Moreover, even if Plaintiffs were successful in obtaining class certification and winning trial in this Court, the risk of one or more lengthy appeals would be high. All the while, any relief to Settlement Class Members would remain in limbo and be delayed. Accordingly, the risk and uncertainty surrounding certification of the Class also supports approval of the Settlement.

**3. The amount offered in Settlement.**

In light of the risks and uncertainties presented by data breach litigation, the value of the Settlement favors approval. As discussed above, the Settlement makes significant relief available to Settlement Class Members in the form of reimbursement for documented losses, *pro rata* cash payment, and Credit Monitoring Services. Further, the Settlement provides additional ongoing benefits in the business practice changes that Defendant will implement. This Settlement is a strong result for the Settlement Class, and as discussed extensively at Preliminary Approval, the



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

amount offered is in line with other settlements in cases involving data breaches of similar scope. The relief offered by the Settlement is also reasonable in light of "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

**4. The extent of discovery completed and the stage of proceedings.**

Plaintiffs were well informed about the strengths and weaknesses of this case before entering into settlement discussions on behalf of Class Members. Settlement Class Counsel fully investigated and litigated the facts and legal claims in this Action. Boyd Decl. ¶ 28. Their substantial efforts are exhibited in the thorough briefing set before this Court, the meaningful informal discovery regarding the Data Incident, and the favorable proposed Settlement. *Id.* Settlement Class Counsel's efforts to fully brief the issues in the case, to use informal discovery to learn about the cause of the Data Incident and the Personal Information impacted, and to attend a full-day mediation session with an experienced mediator allowed for arm's length and good faith negotiations, and certainly without collusion. *Id.* ¶¶ 6, 15, 28. Moreover, Settlement Class Counsel relied upon their experience in complex class action litigation, including similar data breach actions, and devoted substantial time and resources to this litigation to obtain meaningful relief for the Settlement Class. *Id.* Class Counsel were therefore able to draw on their extensive experience in privacy and data protection litigation to efficiently uncover the relevant information bearing on the critical issues in this case. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Accordingly, Plaintiffs "had enough information to make an informed decision about the strength of their cases and the wisdom of settlement." *Rinky Dink Inc. v. World Bus. Lenders, LLC*, No. C14-0268-JCC, 2016 WL 4052588, at *5 (W.D. Wash. Feb. 3, 2016); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). This factor, too, supports final approval.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

**5. The experience and views of Class Counsel.**

Class Counsel are experienced class action litigators in the field of data breach and data privacy litigation. *See* Boyd Decl. Exhibits 1–4 (Class Counsel's resumes). They recommend the Settlement as being fair, reasonable, and adequate and in the best interests of the Class Members. A great deal of weight is afforded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.*, *Norton v. Maximus, Inc.*, No. 1:14-0030 WBS, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). In light of the complexities of the case and the risks of continuing through further discovery, class certification, summary judgment, trial, and inevitable appeals—not to mention collecting on any judgment—Class Counsel firmly believes that the Settlement represents a favorable resolution of this litigation. "Absent fraud or collusion, courts can, and should, rely upon the judgment of experienced counsel for the parties, when assessing a settlement's fairness and reasonableness." *Demmings v. KKW Trucking, Inc.*, No. 3:14-CV-0494-SI, 2018 WL 4495461, at *9 (D. Or. Sept. 19, 2018) (internal quotation omitted). Thus, Class Counsel's recommendation that the Settlement is fair, reasonable, and adequate "strongly favor" approval. *Lane v. Brown*, 166 F. Supp. 3d 1180, 1191 (D. Or. 2016).

**6. Governmental participants.**

Notice pursuant to CAFA was issued on April 10, 2026. Admin. Decl. ¶ 6. As of this filing, there is no governmental participant in this matter. This factor is neutral.

**7. The reaction of Settlement Class Members to the Settlement.**

The reaction of the Settlement Class to the proposed Settlement has been overwhelmingly positive and supports approval. The number of class members who object to a proposed settlement "is a factor to be considered when approving a settlement" and the "absence of significant numbers of objectors weighs in favor of finding the settlement to be fair, reasonable and adequate." *Lane*, 166 F. Supp. 3d at 1191 (internal quotation omitted). "When few class members object, a court may appropriately infer that a class action settlement is fair, adequate, and reasonable." *Schneider*



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

*v. Wilcox Farms, Inc.*, No. 07-CV-01160-JLR, 2009 WL 10726662, at *3 (W.D. Wash. Jan. 12, 2009). Here, no class members have objected. Admin Decl. ¶ 18. *See* 4 NEWBERG ON CLASS ACTIONS, § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections." (citations omitted)).

Here, no Settlement Class Member objected to the Settlement. Admin. Decl. ¶ 16. Only two individuals requested exclusion from the Settlement. *Id.* ¶ 15. This near-total lack of opposition is a strong indication that the class supports the settlement. *See Clemans v. New Werner Co.*, No. 3:12-cv-5186, 2013 WL 12108739, at *5 (W.D. Wash. Nov. 22, 2013) (in settlement where one objection and four exclusions were filed, court found that "the overwhelming non-opposition to and participation in the Settlement [are] strong indications of Class Members' support for the Settlement as fair, adequate, and reasonable."); *see also Rodriguez*, 563 F.3d at 967 (concluding that the district court "had discretion to find a favorable reaction" when 54 of 376,301 class members objected to settlement); *Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *8–9 (W.D. Wash. Mar. 26, 2001) (granting final approval where "less than 1% of the class opted out and only nine objections were submitted").

Accordingly, the Settlement Class's supportive reaction to the Settlement favors final approval.

**G. The Settlement Treats Settlement Class Members Equitably.**

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. Courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), adv. comm.'s note (2018). In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Paredes Garcia v. Harborstone Credit Union*, 2023 WL 4315117, *5 (W.D. Wash. July 3, 2023) (quoting *In re*



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

*Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement does not improperly discriminate between any segments of the class, as all Settlement Class Members are entitled to the same relief. Likewise, the provision of Service Award for the named Plaintiffs is consistent with the equitable treatment of Class Members. The requested Service Award of $3,500.00 per Class Representative is reasonable and in line with awards granted in similar cases. *See, e.g.*, *Roe v. Frito-Lay, Inc.*, No. 14-cv-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (noting a $5,000.00 Service Award is presumptively reasonable in the Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015) (approving service awards of $5,000.00). Moreover, as the service awards fall in line with the caps on claims for monetary relief in the settlement, there is not a "'significant disparity between the incentive awards and the payments to the rest of the class members' such that it creates a conflict of interest." *Spann*, 314 F.R.D. at 328 (citing *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013)).

In sum, the Settlement treats all Settlement Class Members equitably relative to each other, and final approval is appropriate.

## CONCLUSION

Plaintiffs respectfully request that the Court grant this Motion for Final Approval of Class Action Settlement, find that the settlement is fair, reasonable, and adequate, and enter Plaintiffs' proposed Final Approval Order.

*I certify that this memorandum contains 5,756 words in accordance with the Local Civil Rules.*

Date: September 11, 2026

*s/ Kaleigh N. Boyd*
Kaleigh N. Boyd, WSBA #52684
MCNAUL EBEL PLLC
One Union Square
600 University Street, Suite 2700
Seattle, WA 98101
Tel: (206) 467-1816
Email: kboyd@mcnaul.com

Raina Borrelli (admitted *pro hac vice*)
STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
E: raina@straussborrelli.com

Nickolas J. Hagman (admitted *pro hac vice*)
CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
E: nhagman@caffertyclobes.com

Jessica A. Wilkes (admitted *pro hac vice*)
FEDERMAN & SHERWOOD
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
E: jaw@federmanlaw.com

*Class Counsel for Plaintiffs and the Putative Class*